**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RIEDER NORAM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 24-cv-08440 |
| | ) | |
| CENTERLINE ARCHITECTURAL | ) | |
| SUPPLY, LLC; JR HUGHES; | ) | |
| KYLE CZEKALSKI; HGCL, LLC; | ) | Hon. Jorge L. Alonso |
| JOHN R. HUGHES AND ASSOCIATES, | ) | |
| INC.; CL SERVICES & DISTRIBUTION, | ) | Magistrate Judge Jeffrey Cole |
| LLC; JOHN R. HUGHES; K2000 FINISHING, | ) | |
| LLC; AND 45 NORTH CAPITAL LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF RIEDER'S MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I.
## PRELIMINARY STATEMENT

Plaintiff RIEDER NORAM, INC. ("Rieder") seeks temporary, preliminary and permanent injunctive relief requiring Defendants Centerline Architectural, Supply, LLC ("Centerline"), JR Hughes ("Hughes"), Kyle Czekalski ("Czekalski"), HGCL, LLC ("HGCL"), John R. Hughes and Associates, Inc. ("Hughes Group"), CL Services and Distribution, LLC ("CL"), John R. Hughes ("Hughes Sr."), K2000 Finishing, LLC ("K2000"), and 45 North Capital LLC ("45 North") (Centerline, Hughes and Czekalski, collectively, at times, the "Centerline Defendants"; all defendants collectively, at times, "Defendants"), to immediately return to Rieder the Products, Confidential Information, and Data, as defined in the Complaint and Motion, that the Defendants have wrongfully taken, used and withheld from Rieder. Rieder also seeks injunctive relief to enforce the restrictive covenants agreed to by the Centerline Defendants in the Fabrication Agreement, barring all Defendants, for the two years provided in the Fabrication Agreement, from soliciting customers or otherwise competing against Rieder in the cementitious building product industry.

## II.
## STATEMENT OF FACTS

### A.    Background

Rieder, a subsidiary of non-party Rieder Overseas GmbH, imports and sells reinforced concrete facade panel products ("FibreC") and accessory items used in the installation of FibreC systems (collectively, "Products") in North America. (**Exhibit 1**, Declaration of Frank Wagenbauer, "W. Dec." ¶ 6.) Prior to 2021, Centerline performed non-exclusive fabrication work for Rieder in the U.S. (*Id.*) In early 2021, Centerline and Rieder agreed to form a new company, RCL Services, LLC ("RCL"), to fabricate and store on a non-exclusive basis Rieder Products. (*Id.*) Centerline agreed to close its operations as part of RCL's formation, with Centerline employees

1

joining RCL, and its owners Hughes and Czekalski becoming employees and Board Members of RCL. (*Id.* at ¶¶ 6-7.) Rieder would continue to operate, holding exclusive responsibility for contracting in its name and selling Products under the "Rieder" brand to end-customers in North America. (**Exhibit 2**, Fabrication Agreement, "**Ex. 2**" § 7(b)-(d).) The "Hughes Group", managed by Czekalski and Hughes, was formerly a sales representative of Rieder. (W. Dec. ¶ 3.) Rieder has recently learned that the "Hughes Group" is made up of various companies and individuals including one or more of Centerline, Hughes, Czekalski, HGCL, H&A, CL, Hughes Sr., K2000 and 45 North. (W. Dec. ¶ 3.)

To protect Rieder's valuable customer relationships and proprietary information, Centerline Defendants each agreed, while represented by legal counsel, to restrictive covenants as part of RCL's formation, limiting their ability to work in the cementitious building product industry during the agreement and for the two years afterward set forth in Fabrication Agreement. (W. Dec. ¶ 8) (**Ex. 2**, § 16.) Centerline Defendants have disregarded their restrictive covenants by, for example, stealing 61,500 sq. feet of Products valued at $900,000 to $1,000,000, misappropriating approximately $250,000 in funds to Centerline, diverting a $1,100,000 contract to a Centerline affiliate, and accepting orders from Rieder customers on behalf of Centerline while misleading those customers about Rieder's role in the transactions. (W. Dec. at ¶¶ 11-19.) Centerline Defendants also used Rieder Confidential Information to create a competing product for use and sale by Centerline and other members of the Hughes Group. (*Id.* at ¶ 15.) Rieder recently discovered that, in or about August 2022, Czekalski formed HGCL, R2000 and CL to divert sales of cementitious building products to the Hughes Group and Rieder competitors. (*Id.* at ¶ 21.) Hughes Group, as a sales rep for Rieder, was negotiating ten to fifteen contracts for Rieder while the parties attempted to unwind RCL; but after those efforts failed, Defendants influenced those

customers to contract with the Hughes Group and/or Rieder competitors. (*Id.* at ¶ 20.) Due to Defendants' interference and misappropriation of orders, Rieder has lost approximately $6,000,000 to $7,000,000—these losses continue to accrue to this day. (*Id.* at ¶ 16.)

Centerline Defendants have also withheld critical Rieder Data, including design and technical specifications specific to each project. (*Id.* at ¶ 13.) Rieder requested a copy of the Data, permitting Defendants to retain their own copy, but Defendants refused, resulting in substantial delays and significant costs for Rieder in attempting to recreate the Data for each project. (*Id.*) In addition, the website shared by Hughes Group and Centerline currently contains Rieder proprietary information, including Rieder owned photographs of Rieder projects and buildings, which Hughes Group and Centerline falsely represent to the public as their own. (*Id.* at ¶ 29.) Defendants' conduct has caused, and continues to cause, irreparable harm to Rieder's customer relationships in North America, as well as to its business name, reputation, and operations. (*Id.* at ¶¶32-34.)

**B.**     <u>**The Operating Agreement and the Fabricating Agreement**</u>

On March 1, 2021, Centerline and Rieder formed RCL and executed an Operating Agreement ("Operating Agreement"), granting each a 50% membership interest in RCL. (**Exhibit 3**, Operating Agreement, "**Ex. 3**".) Under that agreement, Defendants Hughes and Czekalski were appointed to the Board of Managers of RCL by Centerline. Two Board Managers and the Chair were appointed by Rieder, giving Rieder three of the five Manager positions.

Section 6.1 of the Operating Agreement specifies that funds received by RCL "in connection with its business operations shall be deposited in separate bank account(s)" from the Members and "shall be subject to the control of the Board of Managers." (**Ex. 3**, § 6.1.) Section 6.2 precludes any Member from making any charges against RCL for general, administrative or overhead expenses. (**Ex. 3**, § 6.2.) Section 6.6 prevents the Managers from soliciting customers or

performing any services similar to those performed by RCL. (**Ex. 3**, § 6.6.)

Rieder also entered into a Fabrication Agreement with RCL and the Centerline Defendants ("Fabrication Agreement"), which permitted RCL on a non-exclusive basis to fabricate Products for Rieder. (**Ex. 2**.) The agreement contains restrictive covenants preventing "Centerline and its owners [Hughes and Czekalski]," during the Agreement and for two years thereafter, from (i) soliciting customers from Rieder in the cementitious building product industry in the United States and Canada; (ii) contributing knowledge to any entity engaged in the business of designing, fabricating and selling cementitious building products; or (iii) using or disclosing proprietary information or trade secrets of RCL or Rieder. (**Ex. 2**, § 16(a).) Hughes and Czekalski are identified as owners of Centerline on the Fabrication Agreement. (**Ex. 2**, signature page.) They were represented by counsel when they executed the agreement and initialed each page, including the Section titled "Restrictive Covenants." (W. Dec. ¶ 9) (**Ex. 2**, § 16.)

The Fabrication Agreement also granted Rieder unfettered access to the warehouse that a Rieder affiliate leased to RCL ("Warehouse") to, among other things, review production and confirm that Products were being manufactured according to specifications. (**Ex. 2**, § 5.) Rieder was granted full audit rights and access to all records related to fabricating at RCL. (**Ex. 2**, § 13.) Rieder was exclusively responsible for issuing sales quotations to Rieder customers and establishing prices; RCL was prohibited from issuing quotations or selling to end-customers. (**Ex. 2**, § 7(d).) Rieder solely owned the Products in any state of production. (**Ex. 2**, § 6.)

C.    **Defendants' Breaches of the Operating Agreement and the Fabrication Agreement**

Throughout their contractual relationship, Centerline Defendants have breached various restrictive covenants and provisions and of the Operating Agreement and Fabrication Agreement (collectively, "Agreements") with many breaches continuing to this day.

**(1) Breaches of Restrictive Covenants in the Fabrication Agreement**

Centerline Defendants breached the restrictive covenants in the Fabrication Agreement in the following ways, among others:

a.      Centerline Defendants and/or other Hughes Group members used the Warehouse and Rieder inventory and equipment to perform work for Centerline and/or other Hughes Group members, without a purchase order, invoice, or any payment from Centerline or other Hughes Group members to RCL. (W. Dec. ¶ 14.)

b.      Centerline Defendants and/or other Hughes Group members used Rieder Confidential Information to design and fabricate a competitive product for use by Centerline and/or other Hughes Group members, without Rieder approval. (*Id.* at ¶ 15.)

c.      Centerline Defendants and/or other Hughes Group members procured orders on behalf of Centerline and/or other Hughes Group members from Rieder customers, to be fulfilled with Rieder Products, without Rieder's knowledge. Centerline Defendants kept all profits and misled customers about Rieder's involvement. (*Id.* at ¶ 16.)

d.      Centerline Defendants and/or other Hughes Group members secretly engaged in powder coating and sales of Products on the back of RCL projects, with the work being performed by RCL employees, while Defendants kept the profits and submitted the expenses to RCL for payment by Rieder. (*Id.* at ¶ 19.)

e.      Centerline Defendants and/or other Hughes Group members intentionally and wrongfully diverted at least one substantial contract from a Rieder customer, valued at $1,100,000, to a Centerline affiliate. (*Id.* at ¶ 18.)

f.      Centerline Defendants and/or other Hughes Group members removed 61,500 sq. feet of Rieder Products valued at $900,000 to $1,000,000 from the Warehouse to Centerline's place

of business and have used those pallets of Products for their own benefit. (*Id.* at ¶ 17.)

      g.      After signing the Fabrication Agreement, Czekalski formed HGCL, K2000 and CL to circumvent the restrictive covenants and to divert sales of cementitious building products to Hughes Group members and/or Rieder competitors. (*Id.* at ¶ 21.)

      h.      Centerline Defendants currently display Rieder proprietary information, including Rieder photographs of Rieder projects and buildings, on the website shared by Hughes Group and Centerline, falsely representing these projects and buildings as their own. (*Id.* at ¶ 29.)

      i.      Defendants are actively persuading customers, who Hughes Group was engaged with during its sales services for Rieder, to refrain from contracting with Rieder and, instead, to enter contracts with Hughes Group or with Rieder's competitors. (*Id.* at ¶ 20.)

**(2) Additional Breaches of the Agreements**

      Centerline Defendants breached the following additional provisions in the Agreements:

      a.      Hughes and Czekalski breached the Agreements by calling Rieder customers and falsely claiming that Products were late because Rieder was not paying its invoices. Defendants also refused to implement standard operational procedures required under the Operating Agreement, resulting in late penalties of approximately up to $1 million. (W. Dec. ¶ 22.)

      b.      Hughes and Czekalski breached Section 6.1 of the Operating Agreement and Section 13 of the Fabrication Agreement by unilaterally exercising control over the RCL bank account, changing permissions, and preventing Rieder from accessing the account. (*Id.* at ¶ 23.)

      c.      Hughes and Czekalski breached Section 6.2 of the Operating Agreement by authorizing transfers from the RCL bank account and using the RCL credit card to pay for personal and/or Centerline/Hughes Group-related charges (e.g., Centerline Go-Daddy expenses, thousands of dollars of travel expenses for a Centerline employee, and unsubstantiated items from Amazon).

(*Id.* at ¶ 23.)

d.       Hughes and Czekalski breached Section 6.2 of the Operating Agreement by fabricating invoices to RCL for payment by Rieder to siphon funds to themselves. (*Id.* at ¶ 23.)

e.       In violation of the Letter of Intent incorporated into the Operating Agreement (**Exhibit 4**, Letter of Intent), Defendants Hughes and/or Czekalski unilaterally increased wages of Centerline-aligned employees and paid themselves bonuses in 2022, even though RCL recognized no profit. (*Id.* at ¶ 24.)

f.       In violation of Sections 5 and 13 of the Fabrication Agreement, Defendants prevented a Rieder senior fabrication expert from collecting data for the purpose of ensuring that Products were being manufactured according to specifications. (*Id.* at ¶ 25.)

g.       In violation of Sections 5 and 13 of the Fabrication Agreement, Defendant Czekalski assaulted and physically prevented a Rieder-appointed Board Member from entering his office at RCL. The assault was captured on video. (*Id.* at ¶ 25.)

h.       In violation of Sections 5 and 13 of the Fabrication Agreement, Defendants have withheld and continue to withhold critical Data from Rieder, hindering its ability to complete work on ongoing and former projects. (*Id.* at ¶ 27.)

i.       In violation of Section 7 of the Fabrication Agreement, Defendant Hughes spoke directly with Rieder Customers and agreed to at least one proposal without obtaining Rieder's approval. (*Id.* at ¶ 26.)

j.       Defendants breached Sections 15 and 18 of the Fabrication Agreement by refusing to return the Products, Data, and Confidential Information despite demand. (*Id.* at ¶ 24.)

k.       Defendants also removed the following Rieder property from the Warehouse and refused to return it, despite demand, including without limitation: a computer hard drive, a new

trailer, a crane lift, dust collector, laptops, forklift keys, garage door opener, a table saw, drills (x6), monitors (x5), TV screens, phones (x6), tables, chairs (x15), printers and other office equipment. (*Id.* at ¶ 16).

**D.    Termination of the Fabrication Agreement and Post-Termination Obligations**

On March 12, 2024, Rieder submitted a letter to Centerline, notifying them of the breaches caused by Defendants' restriction and denial of Rieder's access to the RCL bank account, and requested immediate remediation. (**Exhibit 5**, March 2024 Notice.) Defendants never cured the breach. On June 13, 2024, Rieder delivered written notice to Centerline about breaches of restrictive covenants. (**Exhibit 6**, June 2024 Notice.) Defendants failed to cure these breaches as well. The Fabrication Agreement automatically terminated due to Defendants' breaches of contract, receipt of written notice and failure to cure. The agreement terminates automatically, without further notice or action, 45 days after a monetary breach or 30 days after a non-monetary breach if not cured following written notice. (**Exhibit 3**, § 18(b).) Upon termination, all Products in any stage of production must be returned to Rieder, and all confidential and proprietary information of Rieder must also be returned. (**Exhibit 3**, §§18(f); 15(c).) They have not.

**III.**
**ARGUMENT**

**A.    Rieder is Entitled to a Preliminary Injunction Requiring Defendants to Return the Rieder Products, Data, and Confidential Information.**

In ruling on a motion for preliminary injunction, courts consider whether absent preliminary injunctive relief, the moving party will suffer irreparable harm and there is no adequate remedy at law; the moving party has a reasonable likelihood of success on the merits; and the balance of harms favors the moving party. *Goodman v. Ill. Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005). Rieder is entitled to a preliminary injunction, as set forth herein.

8

**B.** **Rieder Has Demonstrated a Reasonable Likelihood of Success on the Merits.**

**(1)** **Governing Law**

Among other things, Section 28 of the Fabrication Agreement vests jurisdiction exclusively in this Court for claims seeking injunctive relief as follows: "To the extent a party seeks injunctive relief under this Agreement, such action may only be brought in the United States District Court for the Northern District of Illinois (the "Court")" and "[e]ach party consents to the exclusive jurisdiction of the Court for such matters." (**Exhibit 3**, § 28.) The Agreements also include choice-of-law provisions, which provide that the Agreements are to be interpreted under the laws of the State of Delaware. (**Exhibit 1,** §10.1; **Exhibit 3**, § 28.) Thus, Delaware law should apply to the breach of contract claims. *See, TP Grp.-Ci, Inc. v. Smith,* No. 16 C 7463, 2016 WL 6647947, at *8 (N.D. Ill. Nov. 10, 2016).Wisconsin law should apply to the conversion claim because the injury and injury causing conduct occurred in Wisconsin, and Wisconsin is the place where the relationship of the parties was centered with respect to the conversion claim. *See, Pittway Corp. v. Lockheed Aircraft Corp.,* 641 F.2d 524, 527 (7th Cir.1981).

**(2)** **Breach of Contract**

The threshold for establishing likelihood of success on the merits is "low." *Michigan v. U.S. Army Corps. of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011). To state a claim for breach of contract under Delaware law, a plaintiff must establish (1) that a contract existed between the parties; (2) the defendant breached its contract obligation, and (3) plaintiff suffered resulting damages. *See VLIW Technology, LLC v. Hewlett–Packard, Co.,* 840 A.2d 606, 612 (Del. 2003). Rieder has established a likelihood of success on its breach of contract claims related to breaches of restrictive covenants in the Fabrication Agreement, additional contractual obligations in both Agreements, and post-termination obligations in the Fabrication Agreement.

9

The restrictive covenants in the Fabrication Agreement are enforceable. Courts in both Illinois and Delaware are "quite willing to enforce covenants executed by entrepreneurs in order to form or sell a business." *Hess Newmark Owens Wolf, Inc. v. Owens,* 415 F.3d 630, 634 (7th Cir. 2005); *see also, GemShares LLC v. Lipton*, No. 17 C 6221, 2019 WL 3287838, at *1 (N.D. Ill. July 21, 2019); *TP Grp.-Ci,* 2016 WL 6647947, at *9 (collecting Delaware cases). Here, the restrictive covenants are enforceable because Rieder had a legitimate economic interest in protecting its customer-relationships and confidential information, and Defendants are business owners who agreed to these covenants in the process of forming a new company. *See, TP Grp.-Ci,* 2016 WL 6647947, at *9 (granting preliminary injunction under Delaware law, enforcing restrictive covenants against a defendant agreed to in connection with the sale of a business).

Rieder is likely to succeed on its claim for breach of restrictive covenants in the Fabrication Agreement. That agreement prevented Centerline Defendants by itself or through others from soliciting customers from RCL or Rieder in the cementitious building product industry; contributing knowledge to any entity engaged in the business of designing, fabricating and selling such products; or using or disclosing proprietary information or trade secrets of RCL or Rieder. (**Ex. 2**, § 16(a).) As set forth above, in violation of these covenants, Centerline Defendants have themselves or through others, among other things, wrongfully used and continue to use Rieder Confidential Information to create competing products (W. Dec. at ¶ 15), redirected at least one key customer to a Centerline affiliate (*Id*. at ¶ 18), accepted orders from Rieder customers on behalf of Centerline and/or other Hughes Group members, while pocketing the profits and misleading those customers about Rieder's role in the transactions (*Id*. at ¶ 16), secretly engaged in cementitious work and sales of Products on the back of Rieder projects (*Id*. at ¶ 19), removed pallets of Rieder Products from the Warehouse, which they have used for their own benefit (*Id*. at

¶ 17), display Rieder proprietary information on their own website (*Id*. at ¶ 31), diverted additional cementitious building product sales to Hughes Group members and/or to Rieder competitors (*Id*. at ¶ 20), and formed multiple LLCs to try to circumvent their restrictive covenants in the Fabrication Agreement. (*Id*. at ¶ 21.) Accordingly, Rieder has established a likelihood of success on its claim for Defendants' breaches of restrictive covenants.

Next, Rieder has established a reasonable likelihood of success in relation to Defendants' additional breaches of post-termination obligations under the Fabrication Agreement by refusing to turn over Rieder Products, Data, and Confidential Information. For example, Defendants have withheld Rieder's project-specific Data despite repeated requests for a copy, as evidenced by **Exhibit 7**, Term Sheet at ¶ 3: "CL [Centerline] holds key customer data / vital documents for project … and won't release[.]" This refusal is in direct violation of Defendants' express contractual obligation to provide Rieder with this information. (*See, infra,* Section B(2).) As a result, Rieder has experienced significant harm to its customer relationships, including delays and confusion, as it is forced to recreate the Data for each project. (*Id.*) Defendants have also refused to turn over the Products, despite demand and an express obligation to do so. *Compare, 7-Eleven, Inc. v. Spear,* No. 10-CV-6697, 2011 WL 830069, at \*5 (N.D. Ill. Mar. 3, 2011) (granting injunction enforcing post-termination contractual obligations to turn over inventory and cease trademark use).

Last, Rieder has established a reasonable likelihood of success with respect to Centerline Defendants' breaches of additional provisions of the Agreements. Centerline Defendants breached Section 6.1 of Operating Agreement and Section 13 of the Fabrication Agreement by unilaterally exercising control over the RCL bank account, changing permissions, and preventing Rieder from accessing the account. In violation of Section 6.2 of Operating Agreement, Hughes and Czekalski

paid themselves based on invoices that they fabricated and authorized transfers from the RCL bank account to pay for personal and/or Hughes Group charges (e.g., Centerline Go-Daddy expenses, thousands of dollars of travel expenses for a Centerline employee, and unsubstantiated items from Amazon.) In addition, in violation of Sections 5 and 13 of the Fabrication Agreement, Centerline Defendants prevented Rieder officials from accessing RCL and collecting Data and have subsequently withheld Data from Rieder. These actions have directly harmed Rieder by causing direct financial loss, disrupting client relationships, and delaying projects. Accordingly, Rieder has established a reasonable likelihood of success on each of its breach of contract claims.

### (2)    Conversion

Rieder has also established a reasonable likelihood of success on its claim for conversion. Under Wisconsin law, the elements of conversion are: "(1) that the defendant intentionally controlled or took property belonging to the owner; (2) that the defendant controlled or took the property without the owner's consent or without lawful authority; and (3) that the defendant's act with respect to the property seriously interfered with the right of the owner to possess the property." *Est. of McCaffery by McCaffery v. Garrett*, 2023 WI App 28, ¶ 39, 991 N.W.2d 705. *See also, New Light Cemetery Ass'n v. Baumhardt,* 373 Ill. App. 3d 1013, 1018 (2007) (applying similar elements under Illinois law and granting preliminary injunction). Here, the Fabrication Agreement expressly states, "RNA [Rieder] shall at all times own the Fibre C in every state of production or fabrication … and the Finished Products[.]" (**Exhibit 3**, § 6.) "All content and materials provided by RNA to RCL in connection with this Agreement … will remain the sole and exclusive property of RNA." (**Exhibit 3**, § 14.) Rieder has requested the Products from Defendants on numerous occasions as it needs the Products for on-going projects and to service prior projects, but Defendants have wrongfully maintained possession of Rieder's property. Accordingly, Rieder

has established a reasonable likelihood of success on its claim for conversion of the Products.

Rieder also has a reasonable likelihood of success on its claim for conversion of Confidential Information, *i.e.,* Rieder's proprietary information that Defendants used to design and fabricate a competitive product; and Data, *i.e.,* project-specific design and technical specifications. Under Section 15, Rieder is entitled to "all information, documentation or knowledge … in any form whatsoever … relating to the products, business or assets of a party," which Defendants agreed "not to use … for its own purpose or benefit[.]" (**Exhibit 3**, § 15(c).) Defendants must return all such information "upon request by the disclosing party or upon termination of this Agreement." (**Exhibit 3**, § 15(c).) Defendants must also provide access to all records related to "Fabrication Services," including drawings and specifications involved in fabricating Rieder Products within seven (7) business days of request. (**Exhibit 3**, § 13.) In addition, Sections 2 and 5 provide Rieder access to all project design specifications. (**Exhibit 3**, §§ 2; 5.) Accordingly, Rieder has an absolute right to the Data and Confidential Information that Defendants have wrongfully used and withheld despite demand by Rieder.

**C.**     <u>**Rieder Will Suffer Irreparable Harm and Has No Adequate Remedy at Law.**</u>

"It is a settled principle of Delaware law that, in a breach of contract claim, 'contractual stipulations as to irreparable harm alone suffice to establish that element for the purpose of issuing … injunctive relief.'" *TP Grp.-Ci,* 2016 WL 6647947, at \*16 (collecting Delaware cases); *see also, GemShares,* 2019 WL 3287838, at \*1, citing *Owens,* 415 F.3d 630 at 634. Here, Centerline Defendants "consent[ed] and agree[d] that money damages would not afford an adequate remedy and that [Rieder] shall be entitled to seek a temporary or permanent injunction or other equitable relief against such breach or threatened breach … without the necessity of showing actual damages[.]" (**Ex. 2**, § 16(b); *see also* § 15(c).)

Additionally, violations of non-competition, non-solicitation and confidentiality provisions are "precisely the sort of claim that cannot be adequately compensated through monetary damages." *TP Grp.-Ci,* 2016 WL 6647947, at *17. *See also, Simplexity, LLC v. Zeinfeld,* No. CIV.A. 8171-VCG, 2013 WL 1457726, at *14 (Del. Ch. Apr. 5, 2013) (Delaware courts have "consistently found a threat of irreparable injury in circumstances when a covenant not to compete is breached.") Here, Rieder has shown irreparable harm and no adequate remedy at law due to losses of reputation, goodwill, competitive position, and business relationships, which are not easily quantifiable and cannot be remedied by monetary damages. For example, Defendants have directly harmed Rieder's competitive position and continuity of business relationships by diverting Rieder customers to itself and/or its competitors, creating a competing product with Rieder's Confidential Information, soliciting orders from Rieder customers, and preventing Rieder from performing work on past and ongoing projects by withholding Data and Products. For all of the foregoing reasons, Rieder has established irreparable harm and an inadequate remedy at law.

**D.    The Balance of Harms Favors Rieder.**

While the denial of injunctive relief would inflict severe and irreparable harm on Rieder, as demonstrated herein, granting such relief as it relates to the return of the Products, Data, and Confidential Information would inflict little or no irreparable harm on Defendants. *See, Teledyne Techs. Inc. v. Shekar,* No. 15-CV-01392, 2015 WL 13653004, at *1 (N.D. Ill. Feb. 17, 2015) (noting, "other than the minor inconvenience of being required to turn over documents and property belonging to" Plaintiff, "Defendant stands to suffer no perceptible harm[.]").

The restrictive covenants only require that Defendants not compete with Rieder in the cementitious industry or use Rieder's intellectual property or proprietary information for a limited period of time and within a defined geographical area. (**Ex. 2**, § 16.) Without injunctive relief,

Rieder will face continued losses of reputation, goodwill, market confusion, competitive position, and business relationships. This is especially true here, where Defendants including Hughes Group have "relationships with several of [Rieder's] customers which could be leveraged against" Rieder. *Simplexity, LLC v. Zeinfeld*, No. CIV.A. 8171-VCG, 2013 WL 1457726, at *14 (Del. Ch. Apr. 5, 2013). Indeed, these relationships are actively being leveraged against Rieder. (W. Dec. at ¶ 31.) The harm to Defendants is relatively small, given that Defendants already engage in business outside the cementitious building product industry and are free to continue to do so, consistent with the restrictive covenants they agreed to. *Id.* Accordingly, the balance of harms favors Rieder.

**E.**     **The Public Interest Will Not Be Disserved.**

Because this is a private commercial dispute, the public interest will not be disserved. In fact, entering an "injunction in this case would serve the public's interest in enforcing covenants that 'promote the formation and success of new businesses.'" *GemShares*, 2019 WL 3287838, at *4 (quoting *Owens*, 415 F.3d at 634.). Rieder has shown that injunctive relief is appropriate.

**F.**     **Plaintiff is Also Entitled to a Temporary Restraining Order.**

Finally, prior to entry of a preliminary injunction, Rieder is entitled to a Temporary Restraining Order to preserve the status quo, enforcing the restrictive covenants in the Fabrication Agreement against Defendants, requiring Defendants to return the Products and Data they have wrongfully taken, and preventing Defendants from interfering with Rieder customers and business relationships, pending a hearing on Plaintiff's Motion for Preliminary Injunction.

**IV.**
**CONCLUSION**

Plaintiff respectfully requests the issuance of a Temporary Restraining Order for the next fourteen (14) days pending a hearing on Plaintiff's Motion for a Preliminary Injunction, and the grant of Preliminary Injunctive Relief on its Complaint, and all other relief this court deems just.

Dated:  September 16, 2024         Respectfully submitted,

**RIEDER NORAM, INC.**

By: */s/ Reinhold F. Krammer*
    Reinhold F. Krammer
    Patrick M. Kelly
    Masuda, Funai, Eifert & Mitchell, Ltd.
    203 North LaSalle Street, Suite 2500
    Chicago, Illinois 60601-1262
    (312) 245-7500
    rkrammer@masudafunai.com
    pkelly@masudafunai.com

    ***Attorneys for Plaintiff***

16

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2024, I electronically filed the foregoing **Memorandum of Law in Support of Rieder's Motion for Temporary Restraining Order and Preliminary Injunction** with the Clerk of the Court using CM/ECF system and served same upon all Defendants as listed below.

*/s/ Rein F. Krammer*

| SERVICE LIST | |
|---|---|
| Defendant Centerline Architectural Supply, LLC | c/o Kyle Czekalski, Registered Agent<br>N3840 2nd Street<br>Weyerhaeuser, Wisconsin 54895 |
| Defendant JR Hughes | 1212 S. Naper Boulevard, Ste. 119<br>Naperville, Illinois 60540 |
| Defendant Kyle Czekalski | N3840 2nd Street<br>Weyerhaeuser, Wisconsin 54895 |
| Defendant HGCL, LLC | c/o Kyle Czekalski, Registered Agent<br>N3840 2nd Street<br>Weyerhaeuser, Wisconsin 54895 |
| Defendant John R. Hughes and Associates, Inc. | c/o John R. Hughes, Registered Agent<br>1212 S. Naper Boulevard, Ste. 119<br>Naperville, Illinois 60540 |
| Defendant CL Services & Distribution, LLC | c/o Kyle Czekalski, Registered Agent<br>N3840 2nd Street<br>Weyerhaeuser, Wisconsin 54895 |
| Defendant John R. Hughes | 1212 S. Naper Boulevard, Ste. 119<br>Naperville, Illinois 60540 |
| Defendant K2000 Finishing, LLC | c/o Kyle Czekalski, Registered Agent<br>N3840 2nd Street<br>Weyerhaeuser, Wisconsin 54895 |
| Defendant 45 North Capital LLC | c/o Kyle Czekalski, Registered Agent<br>N3840 2nd Street<br>Weyerhaeuser, Wisconsin 54895 |